

**FILED**
3/7/2022
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT



**RECEIVED**

FEB 0 8 2022

**THOMAS G. BRUTON**
**CLERK, U.S. DISTRICT COURT**

1   CARL A. WESCOTT
    8210 E. VIA DE LA ESCUELA
2   SCOTTSDALE AZ 85258
    CARLWSOJ@GMAIL.COM
3   *IN PROPRIA PERSONA*
    +1 936 937 2688
4

5

6            **UNITED STATES DISTRICT COURT**

            **NORTHERN DISTRICT OF ILLINOIS**

7

                 **EASTERN DIVISION**

8

9   CARL A. WESCOTT,             Civil Action No.

10            Plaintiff,       **PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF THE DEFEND TRADE SECRETS ACT; BREACH OF FIDUCIARY DUTY; AIDING & ABETTING FIDUCIARY BREACH; TORTIOUS INTERFERENCE WITH CONTRACT; & UNFAIR COMPETITION**

11              vs.

12   ROBERT J. BLOCK;
13   DAVID M. ZEFF, ESQ.;
    FREDERICK C. FIECHTER, IV;
14   ROBERT N. WEAVER, ESQ.
    MICHELLE KNUTSON;
15

16            Defendants.

17   + DOES 1 through 20

18

1:22-cv-00714
Judge Gary Feinerman
Magistrate Judge Jeffrey Cummings
Random

19                 **VERIFIED COMPLAINT**

20     Plaintiff Carl A. Wescott complains of Defendants Robert J. Block; David M. Zeff, esq.;

21 Frederick C. Fiechter, IV; Robert N. Weaver, esq., and Michelle Knutson. In support of his

22 complaint, the Plaintiff alleges as follows:

23

24

25        **PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF**

26 **THE DEFEND TRADE SECRETS ACT; BREACH OF FIDUCIARY DUTY; AIDING & ABETTING FIDUCIARY BREACH; TORTIOUS INTERFERENCE WITH CONTRACT; and UNFAIR COMPETITION**

1

## PARTIES

1.  The Plaintiff is an individual who resides in Scottsdale Arizona.

2.  Defendant David M. Zeff ("Zeff") is a licensed attorney and a resident of the San Francisco metropolitan area. Zeff operated a law office under the name/brand of "Law Offices of David M. Zeff" which was headquartered in Larkspur, California. After forty-eight (48) years of being an attorney, Mr. Zeff is now believed to be in semi-retirement.

3.  Defendant Frederick C. Fiechter, IV ("Fiechter") is an individual residing in San Francisco, California.

4.  Defendant Robert N. Weaver ("Weaver") is a licensed attorney and a resident of the San Francisco metropolitan area, in California. Mr. Weaver is attempting to collect his client Mr. Fiechter's judgment, as co-counsel to Mr. Zeff in many aspects of *Fiechter versus Wescott.*

5.  Defendant Michelle Knutson ("Knutson") is a paralegal and employee of Zeff and resides in Marin County, just north of San Francisco, California.

6.  Defendant Robert Block ("Block") is an individual who resides in Chicago, Illinois. Block is a former member of the Illinois bar who was disbarred on consent on May 30, 1997, for forging judge's signatures and lying both to the Court and to his clients.

Related Non-Defendant Parties

7.  Robert D. Shearer, Jr. ("Shearer") was an Illinois attorney who passed away in May 2021, who was the Plaintiff's attorney. Robert J. Block worked in the law office of Mr. Shearer.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF THE DEFEND TRADE SECRETS ACT; BREACH OF FIDUCIARY DUTY; AIDING & ABETTING FIDUCIARY BREACH; TORTIOUS INTERFERENCE WITH CONTRACT; and UNFAIR COMPETITION**

2

8. Mr. Shearer's estate is liable for some of the acts and non-acts alleged herein, but those issues shall be adjudicated with his estate and administrator separately, here in Cook County Probate Court.

9. Defendant Monette Stephens ("Stephens") is the Plaintiff's ex-wife. Ms. Stephens provided kickbacks and commercial bribes to Mr. Block and to Mr. Shearer to steal confidential and privileged information from them which she and her attorney Terry Szucsko misused. Ms. Stephens also conspired with Mr. Block to commit many more crimes. Of relevance to this action is that Mr. Block was motivated to accept further kickbacks and commercial bribes from third parties in conspiracy with Ms. Stephens. In this particular case, per Mr. Block, he gave the $1234 (approximately) that he received from Mr. Zeff to Ms. Stephens.

## JURISDICTION, VENUE and CHOICE OF LAW

10. Venue is appropriate in Illinois as Block resides in Illinois and provided services to the Plaintiff in Illinois, reporting to Shearer, an Illinois attorney domiciled and practicing in Illinois.

11. This venue (United States District Court in the Northern District of Illinois) is appropriate given the question of federal law, that is a cause of action in this legal complaint, namely the violations of the Defend Trade Secrets Act of 2016 ("the DTSA").

12. We happen to have diversity of citizenship herein as well, with an Arizona Plaintiff and Illinois and California Defendants, but the Plaintiff is relying on the federal question of law for this venue in federal Court.

13. Supplemental jurisdiction over the Plaintiff's Illinois state law claims is pursuant to 28 U.S.C. § 1367(a).

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF THE DEFEND TRADE SECRETS ACT; BREACH OF FIDUCIARY DUTY; AIDING & ABETTING FIDUCIARY BREACH; TORTIOUS INTERFERENCE WITH CONTRACT; and UNFAIR COMPETITION**

14. The Plaintiff has also referenced California law due to the California defendants in this complaint, such as violations of California Business and Professionals 17200, and due to the Defendants' interference with his California Child Support payments.

## CASE SUMMARY

In early 2010, the Plaintiff owed Mr. Frederick C. Fiechter IV US $1.65 million of principal, and considerable interest, that the Plaintiff was unable to pay. Mr. Fiechter sued the Plaintiff in early 2010 (San Francisco case CGC-10-491091, and on July 14, 2015, Mr. Fiechter received a default judgment for $1,490,032.31. The Plaintiff has some issues with said judgment, as he was never served in that case, but he will argue those issues elsewhere.

Beginning in 2017, the Plaintiff hired Illinois attorney Mr. Robert D. Shearer, Jr., as his attorney. Mr. Robert J. Block, a disbarred Illinois attorney, worked as a paralegal in the law offices of Mr. Shearer, and both parties did work for the Plaintiff, including work adversarial to Mr. Fiechter. (Mr. Shearer was retained to do appeals of three decisions in *Fiechter versus Wescott*).

In 2018, Mr. Fiechter, through his agent Mr. David M. Zeff and through Ms. Knutson provided kickbacks and commercial bribes to Mr. Block and thus were able to steal confidential and privileged information about the Plaintiff from Mr. Block, including trade secrets. The Plaintiff then advised Mr. Zeff that Mr. Shearer and Mr. Block worked for him, that both had duties of confidentiality to him, and that Mr. Block's contract included Liquidated Damages ("LD") of $10,000 per communication with legal adversaries. As Mr. Zeff and Mr. Block were aware, Block and Wescott had agreed that such LD were not intended as a penalty, but rather as an estimated calculation of the injury Wescott would suffer if Block and adversaries breached that section of

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF THE DEFEND TRADE SECRETS ACT; BREACH OF FIDUCIARY DUTY; AIDING & ABETTING FIDUCIARY BREACH; TORTIOUS INTERFERENCE WITH CONTRACT; and UNFAIR COMPETITION**

4

Block's contract. The Plaintiff's notice to Zeff constituted constructive notice to Knutson (his paralegal), Fiechter (his client), and Weaver (co-counsel on Fiechter matters related to Wescott).

Mr. Zeff, Ms. Knutson, Mr. Fiechter, and Mr. Weaver then facilitated another round of bribes and kickbacks to Mr. Block to steal further confidential and privileged information of the Plaintiff's, including trade secrets as defined in the DTSA, from the law offices of opposing counsel, Mr. Shearer.

Mr. Fiechter, via his agents, then misused that information in a variety of illegal and tortious ways. Once the Plaintiff discovered the second set of thefts, he wrote to Mr. Fiechter, who further ratified the acts of his agents (not that that has much legal significance, as he is responsible for the tortious acts of his agents).

As the first steps to attempt to right the scales of justice for the various misdeeds alleged herein, the Plaintiff complained to the ARDC about Mr. Shearer, who was in the process of being disbarred by the ARDC, with discipline about to be imposed in May 2021. Mr. Shearer died just before that.

As a result of the Defendants' illegal acts, the Plaintiff has been damaged in many ways.

## ALLEGATIONS OF CONSPIRACY

15. Upon information and belief, there are even more individual Defendants currently unknown to Plaintiff, who shall emerge with the benefit of legal discovery.

16. Plaintiff is informed and believes and thereon alleges that at all times material to this Complaint, Mr. Zeff, Mr. Fiechter, Ms. Knutson, Mr. Shearer, Ms. Stephens, Mr. Block, and Mr. Weaver, as individuals, in addition to acting for themselves individually, as well as for the benefit of

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF THE DEFEND TRADE SECRETS ACT; BREACH OF FIDUCIARY DUTY; AIDING & ABETTING FIDUCIARY BREACH; TORTIOUS INTERFERENCE WITH CONTRACT; and UNFAIR COMPETITION**

their respective marital community (if any per individual case), are and were acting as the agents, servants, employees, and/or representatives of, and with the knowledge, consent, and permission of, and in conspiracy with, each and all of the Defendants (individual and entities) and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy.

17. Plaintiff further alleges on information and belief that the acts and non-acts of each of the individual Defendants were fully ratified by each and all the Defendants.

18. Specifically, and without limitation, Plaintiff alleges on information and belief that the tortious actions, failures to act, breaches, and negligence alleged herein and attributed to one or more of the specific individual Defendants were approved, ratified, and/or done with the cooperation and knowledge of each and in conspiracy with all other Defendants (individual and corporate).

19. In addition, upon information and belief, there are corporate, LLC, and other entity type Defendants currently unknown to Plaintiff, which shall emerge with the benefit of legal discovery.

20. Plaintiff is informed and believes and thereon alleges that at times material to this Complaint, those entity defendants, in addition to acting for themselves and for their own behalf, were acting as the agent, servant, and/or representative of, and with the knowledge, consent, and permission of, and in conspiracy with each and all of the Defendants (entity and individual) and within the course, scope, and authority of that agency, service, employment, representation, and conspiracy.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF THE DEFEND TRADE SECRETS ACT; BREACH OF FIDUCIARY DUTY; AIDING & ABETTING FIDUCIARY BREACH; TORTIOUS INTERFERENCE WITH CONTRACT; and UNFAIR COMPETITION**

6

21. Plaintiff further alleges on information and belief that the acts and non-acts of each of the entity Defendants were fully ratified by each and all the Defendants.

22. Specifically, and without limitation, Plaintiff alleges on information and belief that the tortious actions, failures to act, breaches, and negligence alleged herein and attributed to one or more of the specific entity Defendants were approved, ratified, and/or done with the cooperation and knowledge of each and in conspiracy with all other Defendants (individual and corporate).

## NARRATIVE AND SUMMARY OF FACTS

### a.) The Collection Litigation

23. In the 2017, the Plaintiff became acquainted with Robert J. Block ("Block") a disbarred Illinois attorney, and Robert D. Shearer, Jr., a former Illinois attorney (now deceased).

24. The Plaintiff hired them both to provide legal services, with Mr. Block often providing his services under the supervision and auspices of Mr. Shearer.

25. Block was an efficient and effective legal writer and ghostwriter. Block's most attractive quality, however, was that he was relatively affordable.

26. The Plaintiff could obtain legal services from Block of a respectable quality for amounts that were perhaps 20% or less of what a skilled (and not disbarred) legal practitioner would charge.

27. Block's services to the Plaintiff were subject not only to the strictures of California Business & Professions 6068 which govern the confidentiality of paralegal services but to an express contract between the parties which set out Liquidated Damages ("LD") for breaches of confidentiality.

28. The reason that Block's contract contained such LD was that Block had previously contacted the Plaintiff's ex-wife, Monette Stephens, who unfortunately has been a legal adversary through the

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF THE DEFEND TRADE SECRETS ACT; BREACH OF FIDUCIARY DUTY; AIDING & ABETTING FIDUCIARY BREACH; TORTIOUS INTERFERENCE WITH CONTRACT; and UNFAIR COMPETITION**

7

parties' marital dissolution forwards.

29. In the 2017 work and beyond, Block agreed to be supervised by Illinois attorney Robert Shearer ("Shearer") in accordance with California legal requirements that paralegals be supervised by attorneys.

30. Shortly after Block's retention by the Plaintiff, Shearer expressly agreed to supervise the quality of Block's work and to ensure that Block provided the Plaintiff with ethical representation.

31. The Plaintiff spent considerable time and energy educating himself in the law and the unlikely collaboration began in earnest in the summer of 2017.

32. While results were mixed, the Plaintiff was encouraged to obtain traction, e.g. favorable preliminary rulings, in several high dollar commercial cases.

33. Interestingly the Plaintiff found himself occupying a position between pure *pro se* litigant and represented litigant, just as he had profited by occupying a position between pure real estate speculator and completed project developer. The Plaintiff's litigation initiative (hereafter "Litigation Strategy") thus had his intellectual property "signature" of leveraged returns based on strategically lean investment.

34. Just as interestingly, the Litigation Strategy developed by the Plaintiff was, in sum and substance, a collection strategy.

### b. The Defendant's Acts of Misappropriation

35. For reasons unknown to the Plaintiff, Block became disenchanted with the Plaintiff in early 2019.

36. On or about January 27, 2019, Block called Mr. Weaver, offering to sell confidential and privileged information.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF THE DEFEND TRADE SECRETS ACT; BREACH OF FIDUCIARY DUTY; AIDING & ABETTING FIDUCIARY BREACH; TORTIOUS INTERFERENCE WITH CONTRACT; and UNFAIR COMPETITION**

8

37. Weaver introduced Block to Zeff, and the parties then conducted most of their illegal business by email (Exhibit A has some of the dozens of emails the Plaintiff now has in his possession).

38. The Plaintiff is informed and believes that Shearer was aware of this activity, made no attempt to prevent it or to warn the Plaintiff and encouraged Block to deal with Zeff in the hopes of obtaining referrals of legal work in Chicago.

39. Over the next nine months, in two sets of thefts of trade secrets as part of the Plaintiff's confidential and privileged information being stolen from the law offices of Mr. Shearer, Zeff, as authorized by Fiechter, made PayPal payments to Block aggregating approximately $1234 for information concerning the Plaintiff (Exhibit B has some of the payments made by Zeff to Block, on behalf of his cohorts-in-crime and client-in-crime Fiechter, that Block then gave to Ms. Stephens).

40. In effect, Fiechter bribed Block to disclose the Plaintiff's confidences and secrets.

41. Defendant Knutson, as paralegal, actively and knowingly assisted Zeff and Fiechter, and, on information and belief, performed the ministerial acts necessary to making the kickbacks and commercial bribes, in the form of PayPal payments.

42. Zeff and Knutson knew, or should have known that they were improperly, unlawfully and unethically accessing confidential information belonging to the Plaintiff. "Red flags" on the subject included:

43. Block's disclosures:

    **a.** Block's admission that he was a disbarred attorney;

    **b.** Block's admission that he and Mr. Shearer both provided legal services to the Plaintiff;

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF THE DEFEND TRADE SECRETS ACT; BREACH OF FIDUCIARY DUTY; AIDING & ABETTING FIDUCIARY BREACH; TORTIOUS INTERFERENCE WITH CONTRACT; and UNFAIR COMPETITION**

9

c. Block's admission that not only was he a paralegal and a fiduciary, but also had signed a confidentiality agreement.

d. Block's disclosure of opinions, insights, and evaluations of the Plaintiff's cases and other business methods.

e. Block's *chutzpah in charging Zeff for a transparently false and conclusory email declaration that he was not a fiduciary, for which Block was PayPal'd $100 on the same day by Knutson.*

f. Plaintiff's sources and methods of funding and specifically, of funding cases;

g. Plaintiff's consulting and advisory prospects in the Venture Capital and Hedge Fund industries;

h. The strengths and weaknesses of a number of the Plaintiff's major cases;

i. Plaintiff's banking information and short-term collections prospects. (Collectively "Block's Disclosures").

44. Block's Disclosures were accordingly of interest not only to Zeff as a short-term collector but as reflecting an innovative and interesting long term collection strategy. *Zeff was, in effect, a commercial collector spying on the proprietary methods of another commercial collector.*

45. Even though the Plaintiff disclosed to Zeff that Fiechter's judgment was fraudulent (no personal service) and currently uncollectible (stacked behind $10+ million owed in Child Support and Spousal Support and Other Payments to Spouse), the Defendants made use of Block's Disclosures in attempting to collect on Fiechter's fraudulent judgment.

46. Upon information and belief, the Plaintiff's Litigation Strategy is of independent interest to Zeff, Knutson and Fiechter for its innovative and valuable proprietary content.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF THE DEFEND TRADE SECRETS ACT; BREACH OF FIDUCIARY DUTY; AIDING & ABETTING FIDUCIARY BREACH; TORTIOUS INTERFERENCE WITH CONTRACT; and UNFAIR COMPETITION**

47. Twice, the Defendants misused stolen banking and Paypal information to levy the Plaintiff's Paypal accounts when he had approximately $500 and $2200 in the account.

48. Worse yet, due to the levies on his accounts, when the Plaintiff needed to contest and have another $17,350 of Paypals returned to him due to fraud, the Plaintiff was unable to do so, costing him another $17,350.

49. The significant consequences of the loss of that cash are exponential, as the Plaintiff had a contract he wished to invest in where he would be paid $5000 per converted lead, where each lead cost him about $1, and about a third of leads converted.

50. The Plaintiff will fully prove all allegations and damages at jury trial.

## DEMAND FOR JURY TRIAL

51. Under the Seventh Amendment to the United States Constitution, the Plaintiff has a right to a jury trial for his Constitutionally-protected petitioning rights. (Also, as per *Fed. R. Civ. P 38(b)*).

52. The Plaintiff hereby respectfully requests a jury trial on all issues raised herein, including all triable facts and issues related to his current causes of action and any facts, issues, requests, and/or causes of action that the Plaintiff or his future attorney may add within the timelines allowed by this Court.

---

## COUNT I – VIOLATIONS OF THE DEFEND TRADE SECRETS ACT

53. The Plaintiff realleges paragraphs 1-50 as if fully set out herein.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF THE DEFEND TRADE SECRETS ACT; BREACH OF FIDUCIARY DUTY; AIDING & ABETTING FIDUCIARY BREACH; TORTIOUS INTERFERENCE WITH CONTRACT; and UNFAIR COMPETITION**

11

54. The Defendants utilized kickbacks and commercial bribery to pilfer confidential and privileged information from the law office of opposing counsel, and then misused the stolen information and intellectual property to harm the Plaintiff.

55. The Defendants' acts of misappropriation violated the Defend Trade Secrets Act of 2016 (Effective May 11, 2016; Public Law Pub.L. 114–153; Enacted by the 114th United States Congress; and as embodied in 130 Stat. 376)

56. Specifically, the Plaintiff's entrepreneurial ideas; clients and their securities offerings; capital raise clients, projects, valuation methodologies; litigation strategy and collection methods; the facts related to the Plaintiff's former job as the Managing Director of an accelerator fund and a partner in multiple venture funds and the securities offerings and those of its prospective and actual portfolio companies; his consulting services to specific companies and venture funds all reflected pieces of data that were and are protectable under the DTSA.

57. The Defendants' have acquired the Plaintiff's trade secrets by improper means within the meaning of the DTSA including kickbacks and commercial bribery.

58. The Plaintiff has been damaged by the misappropriation of his trade secrets and by the exposure of the Plaintiff's confidential and proprietary information to the Defendants.

59. The penalty in Block's contract of $10,000 per communication – which Defendants had notice and constructive notice of - is a reasonable foundation for one part of the damages sustained by the Plaintiff that are difficult to value.

60. The loss of close to $20,000 of cash, and the exponential consequences of that, are another component, as shall be fully proven at jury trial.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF THE DEFEND TRADE SECRETS ACT; BREACH OF FIDUCIARY DUTY; AIDING & ABETTING FIDUCIARY BREACH; TORTIOUS INTERFERENCE WITH CONTRACT; and UNFAIR COMPETITION**

## COUNT II – BREACH OF FIDUCIARY DUTY – BLOCK

61. the Plaintiff realleges paragraphs 1-50 as if fully set out herein

62. As Block was rendering paralegal services to the Plaintiff, he was a fiduciary as a matter of law; see California Business & Professions Section 6453.

63. Alternatively and conjunctively, Block was a fiduciary as a matter of Illinois law. (See IPA Code of Professional Ethics Rule 6 (1).

64. Block outrageously violated his fiduciary duties to the Plaintiffs by disclosing and/or selling the Plaintiff's confidential information to the Defendants.

65. The Plaintiff has been damaged by Block's fiduciary breaches.

66. The penalty in Block's contract of $10,000 per unallowed communication is a reasonable foundation for one part of the damages sustained by the Plaintiff that are difficult to value.

67. The loss of close to $20,000 of cash, and the exponential consequences of that, are another component, as shall be fully proven at jury trial.

## COUNT III – AIDING AND ABETTING FIDUCIARY BREACH
## FIECHTER ZEFF WEAVER & KNUTSON

68. The Plaintiff realleges paragraphs 1-50 as if fully set out herein.

69. Per the elements set out in *Nasrawi v. Buck Consultants, LLC*, (2014) 179 Cal.Rptr. 3rd 813[1], the

---

[1] The Plaintiff believes that under Illinois choice of law rules, California law may be applied to the issue of Block's fiduciary relation to the Plaintiff, but the Plaintiff also believes that if Illinois law is applied, the result would be substantially the same.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF THE DEFEND TRADE SECRETS ACT; BREACH OF FIDUCIARY DUTY; AIDING & ABETTING FIDUCIARY BREACH; TORTIOUS INTERFERENCE WITH CONTRACT; and UNFAIR COMPETITION**

13

Defendants were aware of Block's fiduciary duties to the Plaintiff as a paralegal and advisor.

70. The Defendants were aware of Block's breaches of fiduciary duty.

71. The Defendants encouraged Block to breach his fiduciary duties by bribing him to do so.

72. The Defendants' conduct (e.g., their bribes) constituted a substantial factor in bringing about Block's breaches.

73. The Plaintiff has been damaged by the Defendants' acts of aiding and abetting fiduciary breach.

74. The penalty in Block's contract of $10,000 per unallowed communication, which Defendants had notice and constructive notice of, is a reasonable foundation for one part of the damages sustained by the Plaintiff that are difficult to value.

75. The loss of close to $20,000 of cash, and the exponential consequences of that, are another component, as shall be fully proven at jury trial.

## COUNT IV - INTERFERENCE WITH CONTRACT
### FIECHTER, ZEFF, WEAVER, KNUTSON

76. The Plaintiff realleges paragraphs 1-50 as if fully set out herein.

77. Upon information and belief, the Defendants were likely aware of the Plaintiff's contractual arrangement with Vivos Therapeutics.

78. Despite their knowledge, the Defendants consciously and intentionally induced Block to breach his contractual duties by means of commercial bribes.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF THE DEFEND TRADE SECRETS ACT; BREACH OF FIDUCIARY DUTY; AIDING & ABETTING FIDUCIARY BREACH; TORTIOUS INTERFERENCE WITH CONTRACT; and UNFAIR COMPETITION**
14

79. As a direct result of the Defendants' acts and bribes, the Plaintiff lost close to $20,000 that he otherwise would have invested in Vivos leads, with the expectation of getting paid $5000 over time for about one third of the leads that cost him about $1 to source.

80. The actions of the Defendants were an extremely significant factor in damaging the Plaintiff's ability to significantly monetize his contract with Vivos.

81. The Plaintiff has been damaged by the Defendants' acts of interference.

82. The penalty in Block's contract of $10,000 per communication does not even begin to address the secondary damages caused by the Defendants' act, but is a reasonable foundation for some of the hard to value damages, such as exposure of the Plaintiff's IP and potential damage to his reputation.

83. The Plaintiff will fully prove the secondary damages caused by his not being able to invest close to $20,000 in Vivos leads at about $1/lead, thus not being able to sell (approximately) one third of them to Vivos as converted leads at $5000/lead.

**COUNT V - UNFAIR COMPETITION – ZEFF, WEAVER, FIECHTER, KNUTSON**

84. The Plaintiff alleges paragraphs 1-50 as if fully set out herein.

85. Defendants Zeff, Weaver and Knutson ware in the collections business.

86. Fiechter is liable for their acts as a principal is liable for the tortious acts of an agent.

87. The Plaintiff had devised and developed a proprietary collections technique as embodied in the Litigation Strategy.

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF THE DEFEND TRADE SECRETS ACT; BREACH OF FIDUCIARY DUTY; AIDING & ABETTING FIDUCIARY BREACH; TORTIOUS INTERFERENCE WITH CONTRACT; and UNFAIR COMPETITION**

15

88. The acts of Defendants in commercially bribing Block to obtain the details of the Litigation Strategy violate California Business & Professions 17200 and, alternatively and conjunctively, the Illinois common law of Unfair Competition as a deceptive act directed at a competitor.

89. The Plaintiff has been damaged by the Defendants' acts of unfair competition interference by the exposure of the Plaintiff's confidential and proprietary information to the Defendants.

## PRAYER FOR RELIEF

a. As to Count I for all damages proximately caused by the Defendants' violations of the Defend Trade Secrets Act of 2016 in misappropriating the Plaintiff's trade secrets by improper means including, without limitation, contractual penalties, a reasonable royalty, double damages for the outrageousness of the Defendants' conduct and all reasonable attorney's fees incurred by the Plaintiff along with the costs of this action.

b. As to Count II for all damages proximately caused by Defendant Block's breaches of fiduciary duty along with exemplary damages in an amount sufficient to punish and deter the Defendant from breaching fiduciary duties in the future.

c. As to Count III for all damages proximately caused by the Defendants' acts of aiding and abetting and/or inducing fiduciary breach along with exemplary damages in an amount sufficient to punish and deter the Defendants from procuring or aiding acts of fiduciary breach in the future.

d. As to Count IV, for all damages proximately caused by the Defendants' acts of tortious interference with the Plaintiff's contract as well as for contractual penalties and exemplary damages in an amount sufficient to punish and deter the Defendants from interfering with

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF THE DEFEND TRADE SECRETS ACT; BREACH OF FIDUCIARY DUTY; AIDING & ABETTING FIDUCIARY BREACH; TORTIOUS INTERFERENCE WITH CONTRACT; and UNFAIR COMPETITION**

1     contractual rights in the future.

2   e.   As to Count V for Unfair Competition, for all damages proximately caused by the Defendants'

3     deceptive acts including attorney's fees and penalties pursuant to Business & Professions 17200

4     and for the imposition of exemplary damages in an amount sufficient to punish and deter the

5     Defendants from engaging in acts of unfair competition in the future;

6

7   f.   For the reasonable costs of the Plaintiff's time for having to represent himself while he cannot

8     afford an attorney (*quantum meruit).*

9   g.   For the costs of this suit and reasonable attorney's fees; and

10   h.   For such other or further relief as the Court deems just.

11

12

13

14 RESPECTFULLY SUBMITTED on February 5th, 2022

15

16

17

18     Carl A. Wescott, *pro se*

19

20

21

22

23

24

25     **PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF**
**THE DEFEND TRADE SECRETS ACT; BREACH OF FIDUCIARY DUTY;**
26     **AIDING & ABETTING FIDUCIARY BREACH; TORTIOUS**
**INTERFERENCE WITH CONTRACT; and UNFAIR COMPETITION**

## <u>VERIFICATION UNDER 28 U.S.C. § 1746</u>

I, Carl A. Wescott, being duly sworn, declare as follows:

I.    I am the Plaintiff in the instant case, a citizen of the United States of America, and a resident of the State of Arizona.

II.    I have personal knowledge of myself, my activities, and my intentions, including those set out in the foregoing Plaintiff's Verified Legal Complaint.

III.    When called on to testify I would competently testify as to the matters stated herein.

IV.    I have personal knowledge of my allegations related to Mr. Block based on conversations with him, an agreement for him to provide me his emails, and my subsequent purchase of emails and further information from Mr. Block.

V.    I possess not only dozens of emails between Mr. Block, Mr. Zeff, and Ms. Knutson, but also multiple payment records for the kickbacks and commercial bribes paid to Mr. Block by Mr. Zeff and Ms. Knutson on behalf of Mr. Fiechter.

VI.    Thus, I legally have in my possession significant evidence that supports all my allegations herein.

VII.    I certify that the facts set forth in this complaint are true and correct, except as to matters therein stated to be on information and belief. As to such matters the undersigned certifies that he verily believes those matters to be true.

VIII.    My verification of this complaint is further governed by 28 U.S.C. § 1746.

_____
CARL A. WESCOTT

**PLAINTIFF'S VERIFIED LEGAL COMPLAINT FOR VIOLATIONS OF THE DEFEND TRADE SECRETS ACT; BREACH OF FIDUCIARY DUTY; AIDING & ABETTING FIDUCIARY BREACH; TORTIOUS INTERFERENCE WITH CONTRACT; and UNFAIR COMPETITION**

18

**rjbrjb1@gmail.com**     EXHIBIT A

| | |
|---|---|
| **From:** | David Zeff <dmz@zefflaw.com> |
| **Sent:** | Friday, January 18, 2019 1:02 PM |
| **To:** | 'Robert J. Block' |
| **Subject:** | RE: Fw: resend of final PPM and Subscription Agreement (this time with Exhibits) |

Hi! Wow! It will take me some time to save and review all these, but please keep them coming. Thank you! David M. Zeff

**From:** Robert J. Block <rjbrjb1@gmail.com>
**Sent:** Friday, January 18, 2019 9:08 AM
**To:** David Zeff <dmz@zefflaw.com>
**Subject:** Fwd: Fw: resend of final PPM and Subscription Agreement (this time with Exhibits)

I don't want to overload your email -- Carl claims equity in this property and these are the supporting materials. His claim appears strained but non-frivolous.

**Thank You,**

**Robert J. Block**



*Expert "Master level" Capital Markets Strategist/Pioneer & Accomplished Legal Consultant*

**Email:** RjbRjb1@gmail.com
**Office:** 480-599-8673

---------- Forwarded message ---------
From: **Robert J. Block** <rjbrjb1@gmail.com>
Date: Fri, Jan 18, 2019 at 10:46 AM
Subject: Fwd: Fw: resend of final PPM and Subscription Agreement (this time with Exhibits)
To: robert block <rjbrjb1@gmail.com>

**Thank You,**

**Robert J. Block**



*Expert "Master level" Capital Markets Strategist/Pioneer & Accomplished Legal Consultant*

**Email: RjbRjb1@gmail.com**
**Office: 480-599-8673**

---------- Forwarded message ---------
From: **Carl A. Wescott** <c@carlawescott.com>
Date: Wed, Apr 4, 2018 at 11:33 AM
Subject: Fwd: Fw: resend of final PPM and Subscription Agreement (this time with Exhibits)
To: <rjbrjb1@gmail.com>

This has the exhibits, better

> **From:** c@carlwescott.com <c@carlwescott.com>
> **Sent:** Saturday, November 3, 2012 3:53 PM
> **To:** Carl Wescott
> **Subject:** resend of final PPM and Subscription Agreement (this time with Exhibits)
>
> This email has the PPM and Subscription Agreement, as well as:
>
> * Property Description/Executive Summary/Business/Operations (Exhibit A & Exhibit F combined)
> * Property Valuation (Exhibit C)
> * Business Valuation (Exhibit D)
> * 2 years of Audited Financials (Exhibit E)
> * Executive Summary/Business/Operations/Property Description (Exhibit A & Exhibit F combined)
>
> Exhibit B is the title information. I have about 400 Megabytes of title information. There are 17 separate properties (contiguous, but separately acquired in the past), and I have 17 title opinions, 17 escrituras (contracts/chain of title), and so on.
>
> I will send you the title information (exhibit B) for the 3 ASR properties. I have the title information for the 14 FBA properties too, but I don't want to clog your mail server or inbox with ~400 Megabytes. I can put those on CDs or memory sticks if you like - we'll figure out the best way to deliver that to you.
>
> --Carl

2

**rjbrjb1@gmail.com**

| | |
|---|---|
| **From:** | David Zeff <dmz@zefflaw.com> |
| **Sent:** | Tuesday, January 29, 2019 12:18 PM |
| **To:** | 'Robert J. Block' |
| **Cc:** | 'Michelle Knutson'; 'David Zeff' |
| **Subject:** | RE: To be less opaque 9415-1 |

Dear Mr. Block: Thank you for the offer. We are not prepared to do this. If you could send any information about CW's bank accounts and payments we would appreciate that. Thank you!

David M. Zeff
Law Offices Of David M. Zeff
1100 Larkspur Landing Circle, Suite 350
Larkspur, CA 94939
Tel: (415) 923-1380 Fax: (415) 923-1382
dmz@zefflaw.com

**From:** Robert J. Block <rjbrjb1@gmail.com>
**Sent:** Monday, January 28, 2019 3:02 PM
**To:** David Zeff <dmz@zefflaw.com>
**Subject:** To be less opaque

If it would be easier and you and/or your client could efficiently harvest the data, I could give you temporary access to my email with the understanding that you would only download Wescott communications. There are thousands.

Would this be a helpful short-cut?

1

**rjbrjb1@gmail.com**

| | |
|---|---|
| **From:** | David Zeff <dmz@zefflaw.com> |
| **Sent:** | Thursday, August 8, 2019 3:46 PM |
| **To:** | 'Robert J. Block' |
| **Cc:** | dmz@zefflaw.com; 'Michelle Knutson' |
| **Subject:** | RE: basic facts and legal reasoning on the US $50k |

Dear Mr. Block:

I will prepare a declaration for you concerning the documents you provided and your knowledge as described to me. Will you be able to review, sign and return it to me tomorrow or over the weekend? I would need to file it on Monday.  Please advise.

Thank you! David M. Zeff

David M. Zeff
Law Offices Of David M. Zeff
1100 Larkspur Landing Circle Ste.350
Larkspur, CA 94939
Tel: (415) 923-1380 Fax: (415) 923-1382
dmz@zefflaw.com

CONFIDENTIAL COMMUNICATION: This electronic transmission and any documents attached hereto, (a) are protected by the Electronic Communications Privacy Act (18 USC Sections 2510-2521), (b) are intended only for the sole use by the intended recipient named above, and (c) may contain legally privileged and/or confidential information. If you receive this email in error please immediately notify me at (415 923-1380 and permanently delete the original and any copy of this e-mail, and any printout thereof.  Any disclosure, distribution, or use of the contents of the information received in error is strictly prohibited.

**From:** Robert J. Block <rjbrjb1@gmail.com>
**Sent:** Thursday, August 08, 2019 1:50 PM
**To:** David Zeff <dmz@zefflaw.com>
**Subject:** Fwd: basic facts and legal reasoning on the US $50k

Mr. Zeff:

First of all, confirming: I have no professional or personal obligation of confidentiality to Mr. Wescott.

What is most interesting in this chain is the self-serving June 19, 2019 email from Moon to Wescott (third email down). Moon acknowledges that your client and Monette have filed writs of attachment. He proposes paying Carl $50K in a manner calculated to evade those writs. I think that is inculpatory. Nor do I believe a Judge will credit Moon's posturing that the payment is from altruistic motives. You're the expert but a Court may find the communication to be irregular, suggestive and redolent of bad faith.

I will see what other nuggets I can excavate in the morning. I recalled this one off the top of my head because it was so ill-advised.

Thx for your call.

---------- Forwarded message ---------
From: Carl Wescott <carlwescott42@gmail.com>
Date: Fri, Jun 21, 2019, 6:02 PM
Subject: Fwd: basic facts and legal reasoning on the US $50k
To: Robert J. Block <RjbRjb1@gmail.com>

Telepathically sent to Siri who hopefully got it right.

Begin forwarded message:

> **From:** Bernard Moon <bernard@sparklabsglobal.com>
> **Date:** June 20, 2019 at 1:49:11 PM PDT
> **To:** Carl Wescott <carl@sparklabsiot.com>
> **Cc:** Carl Wescott <carlwescott42@gmail.com>, Carl A Wescott <carlawescottiii@gmail.com>, Jimmy Kim <jimmy@sparklabsglobal.com>
> **Subject: Re: basic facts and legal reasoning on the US $50k**
>
> Carl,
>
> Per my prior email – your association with SparkLabs has ended. You are not to do any work on SparkLabs' behalf. Do not attend Demo Day. We are "disinviting" you.
>
> Bernard
>
> On Thu, Jun 20, 2019 at 10:47 AM Carl Wescott <carl@sparklabsiot.com> wrote:
>> Bernard,
>>
>> Thanks for getting back to me.
>>
>> As per prior communications, I plan to resign from my SparkLabs job and from the partnership in early July, as that is when you indicated (at one point) that the $50,000 could or would (likely) be paid. Once those monies are in hand, I will resign and focus on getting a new safe/secure place to live and/or work and starting my new life. (Yes, very repetitive).
>>
>> If it takes longer to pay, then I will resign when paid that US $50,000. Since I cannot work on SparkLabs IoT, I will continue to carry out other tasks and projects for the next couple or three weeks until I get this payment. Among other promised deliverables, I'm still going to complete the Singapore writeup, and I'll finally have the time post-Seoul (if not paid by then) to use my rolodex to fill out mentors at some of the new accelerators (long list for DC, for example).
>>
>> My housing and other issues that have been outstanding for years are simply a matter of money. I already have a plane ticket to Seoul and a hotel for Monday through Friday, and two other nights of

2

hotels. As per Dr. Jo's request, I am speaking at Inha University on June 28th, and I still plan to do this. I'm still planning to attend Demo Day and related events that I'm registered for and was invited to (and obviously will not be discussing any of these issues with anyone). As you know, it's been my plan to attend these Demo Day events for the last time as an "insider", and then to resign in early July after getting this $50,000. If you're specifically disinviting me from attending Demo Day, please let me know.

CAW

--
Carl A. Wescott
+1 415 335 5000
Email: carl@sparklabsiot.com
URL: www.sparklabsiot.com



On Wed, Jun 19, 2019 at 7:57 PM Bernard Moon <bernard@sparklabsglobal.com> wrote:

Carl,

Jimmy forwarded to your below email to me. Given Jimmy's family situation, I will reply for both of us.

We are having multiple email exchange with you about the same topics, often repeating things that were previously said or addressing comments from you that seem to ignore what was said earlier.

On June 7th, Jimmy sent you an email confirming that you should stop all SparkLabs activity, and that you should proceed with your proposed "resignation." Since you don't have a formal role with the organization, we did not think any formal resignation or transition process was needed. Jimmy only asked that you show us the resignation message you planned to send out, so that we were comfortable with your proposed messaging.

Nothing has changed since that email was sent. In your latest email you say, "I can understand why Bernard and you no longer wish me to be part of the SparkLabs team (if that's true)." With all due respect to you, it is true. We do not think your continued involvement with SparkLabs is appropriate given the circumstances. Given that decision, you should not come to Seoul or do any more work on behalf of SparkLabs. As Jimmy mentioned in his June 7th email, you should focus on resolving your family, financial and housing issues and he just reiterated this to me again.

With respect to the consulting fee, we do not believe you are legally entitled to any money. We proposed giving you some money to help you out, if certain business conditions

3

were met.  We will still willing to provide you with the $50K consulting fee discussed out of goodwill, but (A) it needs to be documented in a way so that it resolves all SparkLabs claims for money you have, and (B) you need to take steps that would allow us to pay you these funds directly.  Right now, the SparkLabs entities and myself personally (this past Friday) have been served with writs of attachment directing us to send any money payable to Monette (to satisfy the judgment she had) and to Fiechter (to satisfy that judgment).

We strongly reject with your contention that there was any "oral contract" or any other agreement to pay you funds for investor referrals or for any other services. We told you several times that you could not receive any referral fees as that would be prohibited transaction based compensation (since you do not have a broker dealer license).   Our understanding was that you would get carry and be admitted as a Managing Partner when and if SparkLabs IoT's fundraising was successfully completed.  That has not happened.

Your latest email is extremely troubling.  In addition to raising a number of threatened legal claims, you are blaming SparkLabs for your personal difficulties (homelessness, use of food stamps, inability to visit with your children) which we have not had any visibility on or control over.  We were not even aware of the depth of your financial troubles until recently.  At various points in the past you told us that you would be securing another job, and we never prevented or discouraged you from doing so.

If you would like to propose a way resolving this matter fully and fairly, please do so.  In the meantime, you should not represent that you are a SparkLabs representative in any business discussions you may be having, and should change your LinkedIn and other professional materials to reflect that your involvement with SparkLabs ended.

Respectfully,

Bernard

2019년 6월 19일 (수) 오전 5:44, Carl Wescott <carlawescottiii@gmail.com>님이 작성:

Jimmy, I don't want to bother or upset Bernard on his birthday, so sending to you only.

I will forward to Bernard tomorrow.

After years of oral and written promises that I thought I could rely on (and I believe ARE legally binding), I have heard from both you and Bernard that you don't believe there is any legal basis to

compensate me or pay me, and thus I am setting out the basic facts and legal reasoning for your review.

As you know, years ago (perhaps 2015 or 2016, will look it up) Bernard, as agent for SparkLabs and partner thereof, offered me 5% ($50,000 per $1 million raised) for referrals to investors that SparkLabs closed. Oral contract formed. Offer, acceptance, meeting of the minds.

I then did more than refer. I took John Lee to lunch (part of the consideration, a legal term relating to the original oral contract), found out the details of his venture fund within MLB, advised him a bit on it on some other investments, and recommended SparkLabs. MLB then invested an eight-digit amount, including US $1 mil to SparkLabs. Highly confidential as you know. I know the other details on US $20+ mil more but cannot divulge due to NDA.

But rather than pay the $50,000, Bernard suggested we deepen the relationship, and that I become a Venture Partner in SparkLabs IoT. I will have to look up what % of the carry I was to get; I think it was 3%. Though nothing was guaranteed, based on SparkLabs IoT being funded and making 16 investments with many more to come, I was to reasonably expect much more than US $50,000 over time.

It was only later that I discovered that SparkLabs IoT was NOT funded and in fact the 16 investments trumpeted as SparkLabs IoT in press releases and on the web site were made by a different entity. This is the reason I have suggested a new clean entity if SparkLabs IoT is going to continue, though that is more related to the job I was offered in 2016 and not the consulting I was to be paid for before. Continuing on, another idea is just to shut it down. I offered to raise an IoT accelerator fund in Singapore (and Bernard thinks a FinTech one there is a better idea. I agree that both should be viable and have written up some details and can continue to refine the writeup and concept if we have interest).

If I were to file a lawsuit over this issue, the way the law works in the US is that I would get:

1) 10% interest compounded from the date I was supposed to originally get paid (2015?)

2) *if* fraud is proven, I would get triple damages on top of the interest-adjusted number. I'm pretty sure that the civil torts of promissory fraud, and state and federal securities fraud, among other types of fraud, would apply. Essentially I purchased a security (a share in SparkLabs IoT) based on false information, with the $50,000 I should have received. Was SparkLabs IoT actually funded? Did it make those 16 investments? Did it reasonably expect to generate the expected cash flow? I refer your attention to US Securities and Exchange Commission Rule 10b-5, codified at 17 C.F.R. 240.10b-5, part of the Securities Exchange Act of 1934, which prohibits any act or omission resulting in deceit relating to the sale of any security. I'll go ahead and draft the complaint for your review. I have no plans to file it. I simply want you to look at it, and if you check with Cooley LLP they will confirm that we do have issues and legal obligations.

3) It's likely I would get exemplary/punitive damages as well, given the impact on my life from 2015 through late 2016 and beyond, where I did not get a place to live, have not paid child support, could not afford to hire an attorney so I could see my children. These damages would help adjust for the secondary impact of these issues as well as are meant to deter the tortfeasors from similar behavior in the future.

Based on conversations with Bernard, where I pointed out that my original share of SparkLabs IoT was NOT what it was supposed to be, and that I had not gotten paid, he had promised to make

things right, starting with the original $50,000, and with promises to pay of that $50,000 (most recently, prior to new offer, in January when I was bringing in an investment by Randy Russ).

I have been extremely patient for years. I have been a team player and good soldier. I have made incredible sacrifices on behalf of Bernard, you, and SparkLabs, remaining homeless, on food stamps, not living the lifestyle I should have, not seeing my children, not traveling or dating for the most part outside of some SparkLabs business and a few other sponsored trips.

I do not want to cause issues. I do not want to fight. I simply seek a fair resolution of my issues. Can we please talk about this soon and figure out how to handle this? If you are no longer going to pay the newly promised $50,000, can you please advise as soon as possible?

Right now I'm just trying to get part of the original $50,000. I have been told that SparkLabs grew too quickly and capital was being raised too slowly and that I cannot get paid.

Thus, if SparkLabs still can't afford to pay the US $50k, and partners cannot cover, perhaps we can do something like this:

I'd like to get $5k wired to Capital Ideas Inc. from Korea in the next day or so (but can survive with $2k). It can also be wired to me or to Side Coast Inc. I don't have a personal bank account but can set one up. It can be wired from elsewhere.

I'd like to get $20k wired to Capital Ideas Inc from Korea on July 4th, the first $9k so I can get a safe, secure place to live, and another $10k for an attorney so I can see my children (or perhaps $6k of that for a Child Support payment if that will do the trick). It would be better to get $9k of it earlier so I can lock in my place to live and work. I prefer to lock it in this week, sign a lease starting July 5th, and move starting July 5th.

I'm open to ideas.

Again, if we're no longer going to pay me, please advise ASAP, thanks.

Otherwise, I'd like to work something out on the logistics and timing and am very open to possibilities.

Finally, we need to work through these issues, but I still think highly of Bernard, you, the rest of the team, and the whole SparkLabs ecosystem. I have been honored to be a small part of our success (ironically, more as a mentor than in other roles). I can understand why Bernard and you no longer wish me to be part of the SparkLabs team (if that's true). I fully admit that issues related to where I have had to live and work, in the worst part of San Francisco where crime is rampant, have impacted my ability to perform.

I value our relationships. If and when there is interest, perhaps in the future, I would like to work on some cool projects that are not tainted by these sorts of issues where we are able to succeed together.

--Carl +1 415 335 5000

**rjbrjb1@gmail.com**

| | |
|---|---|
| **From:** | David Zeff <dmz@zefflaw.com> |
| **Sent:** | Friday, August 9, 2019 11:10 AM |
| **To:** | 'Robert J. Block' |
| **Cc:** | dmz@zefflaw.com; 'Michelle Knutson' |
| **Subject:** | RE: The Demure Demurrer  CONFIDENTIAL COMMUNICATION: |

Thank you!  What is the $2 million Young claim he is referring to please?
Thanks, DMZ

David M. Zeff
Law Offices Of David M. Zeff
1100 Larkspur Landing Circle Ste.350
Larkspur, CA 94939
Tel: (415) 923-1380 Fax: (415) 923-1382
dmz@zefflaw.com

CONFIDENTIAL COMMUNICATION: This electronic transmission and any documents attached hereto, (a) are protected by the
Electronic Communications Privacy Act (18 USC Sections 2510-2521), (b) are intended only for the sole use by the intended recipient
named above, and (c) may contain legally privileged and/or confidential information. If you receive this email in error please
immediately notify me at (415 923-1380 and permanently delete the original and any copy of this e-mail, and any printout
thereof.  Any disclosure, distribution, or use of the contents of the information received in error is strictly prohibited.

**From:** Robert J. Block <rjbrjb1@gmail.com>
**Sent:** Friday, August 09, 2019 11:05 AM
**To:** David Zeff <dmz@zefflaw.com>
**Subject:** Fwd: The Demure Demurrer

From 2/19, 6 paragraphs down he says he will have money because he just deposited a cheque to the Side Coast
account.

---------- Forwarded message ---------
From: Carl Wescott <carlawescottiii@gmail.com>
Date: Sat, Feb 16, 2019, 11:01 PM
Subject: Re: The Demure Demurrer
To: Robert J. Block <rjbrjb1@gmail.com>, Carl A Wescott <carlawescottiii@gmail.com>

Perfect, thanks.  All sounds good.  For a chance I will review your work in real time (this will be the practice from here on
out).  I will have feedback 2nite.  I probably have 50 things you wrote from my drugged out days I haven't even looked at
yet.  Will start catching up.

Tomorrow am let's walk through the Arnovick order and I will tell you all the things that Ross misrepresented and/or
that Judge Lunas didn't understand (in most cases because I/we didn't provide evidence (e.g. emails, facts) to support
assertions. I think we object to the order (which essentially does nothing) but then go MfR (which will have to include
some new and/or previously unknown facts and in parallel I might just appeal (certainly have to within 60 days if the M f
R does not yield results... and with the Lake County oral rulings it will be 60.

It would be absolute lunacy and beyond a travesty of justice to go 13 for 13 or whatever it was against various large law firms on all the important hearings (yes, lost the world's shortest M f SJ) with multiple partners and an army of paralegals making 500 page filings on a series of interesting points of case law including at the intersection of BK law and regular contracts etc. and some torts... be a year+ in to this... and then lose the case based on deemed admissions which were all based on a sleazy Ross trick where he didn't provide the discovery, wouldn't provide by email, and would not meet and confer (except by letter).

I think there may have been a second hearing Ross didn't serve papers on either as the begiining says I wasn't there and I was there for both discovery hearings that M and W.. .maybe he filed an OSC for sanctions or a 128.5 or something that we missed too.  Will research.

Let's accelerate the bifurcation too and pile on the spreadsheet and 200 pages of TJ emails and use that everywhere to show Judge Lunas (and hopefully Judge Herrick comes back) that we have all records of all payments to the penny (as they all went to the bank) and all correspondence and this will help with both the M f R and/or appeal and bifurcation.  We only have to win one of M f R and/or appeal while keeping things alive as we certainly will win bifurcation and then it's game over for them.

Now that I will have money Monday (I believe... I deposited a check to the Side Coast account which I believe has now cleared but I could not access today) let's accelerate the depositions of TJ and Stephanie... I've been waiting for a year+ to depose them as I could not afford.  That will help us with the final nail in the coffin on their quiet title case and the bifurcation of note side.  Then we're left with just our causes of action and the damages of hopefully 1.5 to 2.

I assume we can go *res judicata* and collateral estoppel on almost all the Young/MAJ demurrer and ANTI-SLAPP as those issues were already adjudicated on the Arnovick/Lake side.  We get paid on the Young side anyways.  Let's make sure we file the $2 mil Young claim to insurance this week too.

rjbrjb1@gmail.com      (ATTACHMENT 3)

From:         service@paypal.com
Sent:          Wednesday, August 7, 2019 9:38 AM     EXHIBIT B
To:            robert block
Subject:       You've got money

Hello, robert block



# Law Offices of David M. Zeff sent you $120.00 USD

Note from Law Offices of David M. Zeff:

## Per email agreement today. Thank you!

Transaction Details

Transaction ID: 8E467779K9652131Y                    August 7, 2019

1

Amount                                    $120.00 USD

                              Fee            $3.78 USD

                    Total            **$116.22 USD**

Shipping Address

650 Chapman Drive
Corte Madera, CA 94925
United States

Don't see the money in your account?
Don't worry -- sometimes it just takes a few minutes for it to show up.

Get the Details

2

rjbrjb1@gmail.com

| | |
|---|---|
| From: | service@paypal.com |
| Sent: | Thursday, January 31, 2019 2:18 PM |
| To: | robert block |
| Subject: | You've got money |

Hello, robert block

# Law Offices of David M. Zeff sent you $100.00 USD

Note from Law Offices of David M. Zeff:

# Additional Information Fiechter v. Wescott 9415-1

Transaction Details

1

Transaction ID: 49D96306PU915363F

January 31, 2019

Money received

$100.00 USD

Fee $3.20 USD

Total **$96.80 USD**

Shipping Address

650 Chapman Drive
Corte Madera, CA 94925
United States

Don't see the money in your account?
Don't worry -- sometimes it just takes a few minutes for it to show up.

**Get the Details**

2

rjbrjb1@gmail.com

From:           service@paypal.com
Sent:           Friday, January 18, 2019 2:37 PM
To:             robert block
Subject:        You've got money

Hello, robert block

# Law Offices of David M. Zeff sent you $250.00 USD

Note from Law Offices of David M. Zeff:

Fiechter v. Wescott, my file 9415-1
Thank you!

Transaction Details

1

Transaction ID: 5A398880J8072590E

January 18, 2019

Money received

$250.00 USD

Fee $7.55 USD

Total $242.45 USD

Don't see the money in your account?
Don't worry -- sometimes it just takes a few minutes for it to show up.

**Get the Details**

2

rjbrjb1@gmail.com

From: service@paypal.com
Sent: Thursday, August 8, 2019 4:26 PM
To: robert block
Subject: You've got money

Hello, robert block

# Law Offices of David M. Zeff sent you $100.00 USD

### Transaction Details

Transaction ID: 5R30841502186091L                August 8, 2019

1

Amount                                                    $100.00 USD

---

                                        Fee              $3.20 USD

                               Total              **$96.80 USD**

---

Shipping Address

650 Chapman Drive
Corte Madera, CA 94925
United States

Don't see the money in your account?
Don't worry -- sometimes it just takes a few minutes for it to show up.

---

**Get the Details**

---

2